# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROGERS MAJOR,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | Case No. 3:14-cv-00093- RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br><br>Docket 18 |

## I. INTRODUCTION

Claimant, Rogers Major, filed an application for Disability Insurance Benefits and Supplemental Security Income which Defendant, the Commissioner of Social Security, denied.[1] Majors has exhausted his administrative remedies and seeks relief from this Court, arguing that the Commissioner's decision that he is not disabled within the meaning of the Social Security Act is not supported by substantial evidence

---

[1] This matter was originally decided by ALJ decision dated February 7, 2011. On April 27, 2012, the Appeals Council remanded the matter to the ALJ for further evaluation of the treating and non-treating source opinions in the record, and to, "if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment." Tr. 135. A second and final decision was issued November 16, 2012. Tr. 30. This appeal considers the November 16, 2012, decision.

and applies an erroneous standard of law. Majors seeks a sentence four remand for a rehearing to allow the ALJ to remedy harmful defects in the decision.[2]

Majors has filed an opening brief on the merits, construed by this Court as a motion for summary judgment. Defendant opposes, arguing the denial of benefits is supported by substantial evidence and free of legal error. Majors has replied.[3] For the reasons set forth below, Claimant's Motion for Summary Judgment at **Docket 18** is **GRANTED** and this matter is **REMANDED** for further consideration.

## II. STANDARD OF REVIEW

The findings of the Administrative Law Judge ("ALJ") or Commissioner of Social Security regarding any fact shall be conclusive if supported by substantial evidence.[4] A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[5] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[7] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from

---

[2] Docket 23.

[3] Docket nos. 18, 22 7 23.

[4] *See* 42 U.S.C. § 405(g)(2010).

[5] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)(citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[7] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

the Commissioner's conclusion.[8] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[9]

### III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[10] In addition, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who do not have insured status under the Act.[11] Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[12]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national

---

[8] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[9] *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

[10] 42 U.S.C. § 423(a) (2011).

[11] 42 U.S.C. § 1381 (2011).

[12] 42 U.S.C. § 423(d)(1)(A) (2011).

ORDER REMANDING FOR FURTHER PROCEEDINGS - 3
3:14-cv-00093-RRB

the Commissioner's conclusion.[8] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[9]

### III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[10] In addition, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who do not have insured status under the Act.[11] Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[12]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national

---

[8] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[9] *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

[10] 42 U.S.C. § 423(a) (2011).

[11] 42 U.S.C. § 1381 (2011).

[12] 42 U.S.C. § 423(d)(1)(A) (2011).

economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[13]

The Commissioner has established a five-step process for determining disability. Claimant bears the burden of proof at steps one through four.[14] The burden shifts to the Commissioner at step five.[15] The steps, and *the ALJ's findings in this case*, are as follows:[16]

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity. *The ALJ found that the work Claimant engaged in since December 8, 2008, was an unsuccessful work attempt.*[17]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. *The ALJ found severe impairments of degenerative disk disease of the cervical spine with left-sided radiculopathy, degenerative disease of the lumbar spine, and obesity.*

**Step 3.** Determine whether the impairment is the equivalent of a number of listed impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments and meets the duration requirement, the

---

[13] 42 U.S.C. § 423(d)(2)(A) (2011).
[14] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[15] *Id.*
[16] Tr. 21-29. The ALJ noted that Majors met the insured status requirements of the Social Security Act through June 30, 2012. Tr. 20. The Appeals Council amended Claimant's date last insured to December 31, 2015. Tr. 2.
[17] This is not "substantial gainful activity," despite the ALJ's mischaracterization of it as such. This issue of semantics was harmless error.

claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. ***According to the ALJ, Claimant's impairments did not meet or medically equal a listed impairment, either alone or in combination.***

**Residual Functional Capacity**. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. This RFC assessment is used at both step four and step five.[18] ***In evaluating his RFC, the ALJ concluded that Claimant retained the RFC to perform light work with some restrictions.***

**Step 4.** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. ***The ALJ found that Claimant was capable of performing past relevant work as a car rustproofer.***

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled. If not, the claimant is considered disabled. ***Based on the testimony of the vocational expert, the ALJ found that even if Claimant could not perform his past relevant work, he could perform other work in the national economy, such as fast food worker, usher, and tanning salon attendant.***

---

[18] 20 C.F.R. §§ 404.1520(a)(4)(2011); §416.920(a)(4) (2011).

Claimant bears the burden of proof at steps one through four.[19] The burden shifts to the Commissioner at step five.[20] The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[21] Where the grids do not accurately reflect the claimant's limitations, the testimony of a vocational expert is necessary.

In order to be eligible for disability benefits, Claimant must demonstrate that he was disabled prior to December 31, 2015, the date he was last insured for social security disability purposes.[22] The significant date for disability compensation is the date of <u>onset</u> of the disability, rather than the date of diagnosis.[23] Neither the ALJ nor the claimant is bound by the claimant's alleged onset date, the date of diagnosis, or the date a claimant loses her job. Rather, "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence or record."[24]

## IV. DISCUSSION

**A.     Issues on Appeal**

Majors alleges errors at Steps 4 and 5. In response, the Commissioner concedes that the ALJ erred at Step 4 by finding that Claimant was capable of performing his past relevant work as a car

---

[19] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[20] *Id.*

[21] *Id.* at 1099.

[22] Tr. 2; *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). Claimant's eligibility for supplemental security income benefits (SSI) is not dependent upon the date last insured.

[23] *Id.* at 1081.

[24] *Goodson v. Bowen*, 639 F. Supp 369, 373 (W.D.N.C. 1986) (citing SSR 83-20).

rustproofer, but argues that the ALJ's alternative findings at Step 5 that Claimant could perform other work in the national economy negate the need for a remand.

With respect to the Step 5 findings, Claimant alleges that the ALJ's determination of his RFC was flawed because the ALJ improperly rejected a treating physician's prescription for a cane, and because the ALJ did not obtain the opinion of a physician about the functional impact of his various musculoskeletal conditions.[25]

### 1. Duty to Develop the Record

Claimant complains that the ALJ did not include the need for a cane in the RFC or the hypothetical question to the vocational expert.[26] This is true despite Claimant's testimony that he used a cane 100% of the time.[27] Claimant complains that his need for a cane impacts even "sedentary" work, and that although Dr. Grant prescribed a cane, the ALJ improperly dismissed the need for a cane:

> The claimant testified that he began using a cane after his September 2010 surgery . . . In March 2011, Dr. Grant also noted that the claimant reported he had begun using a cane after that surgery. However, Dr. Grant's treatment notes reveal no evidence as to why the use of a cane was necessary (exhibit 14F). Nonetheless, Dr. Grant prescribed the use of a can in March 2011 (exhibit 14F). While the evidence supports the claimant's testimony that he has been using a cane since September 2010 and his primary care physician has prescribed the use of a cane, I find nothing in the medical evidence of record that would support the need for a cane.[28]

Claimant argues that Dr. Grant's prescription was uncontroverted, and therefore the ALJ should have provided clear and convincing reasons for rejecting it, but instead he inappropriately relied on his own

---

[25] Docket 18 at 2.

[26] *See* Tr. 64-65.

[27] Tr. 52.

[28] Tr. 26.

unsupported and incorrect lay medical knowledge to reject the need for the prescribed cane.[29] Finally, Claimant complains that the ALJ did not consider the cane in conjunction with his obesity, despite having determined that his obesity was a severe impairment.

In response, the Commissioner argues that the ALJ did not "reject" Claimant's use of and prescription for a cane, but rather he concluded there was "no evidence as to why the use of a cane was necessary," and concluded that no medical source opined that Plaintiff would be unable to work without a cane. "Because no medical evidence demonstrated that Plaintiff was incapable of working unless he used a cane, the ALJ appropriately declined to include such a limitation in the residual functional capacity."[30] The Commissioner relies upon an absence of explanation in the medical records to justify the ALJ's conclusion that there was no medical reason for the use of the cane, and for omitting the use of a cane from the hypothetical presented to the vocational expert. The Commissioner further rationalizes that "there is no indication that Dr. Grant connected [Claimant's] obesity to the prescription for a cane."[31]

Claimant suggests that the Commissioner's position that a prescribed cane was not necessary in a work setting because it was not specifically prescribed for work is unreasonable. The Court, too, is unpersuaded by the Commissioner's argument that the absence of a specific explanation in the medical records regarding the need for a cane warrants omission of consideration of the cane entirely. However,

---

[29] Docket 18 at 11-12. Claimant suggests that the ALJ apparently lacked an understanding of the fact that abnormalities of the C-5-6 and C6-7 may affect the lower extremities, and further complains that the ALJ failed to consider that his physical therapist recommended that he use a cane on a daily basis. Docket 18 at 12-13, *citing* Tr. 739.

[30] Docket 22 at 5.

[31] Docket 22 at 6.

although Claimant suggests that Dr. Grant's prescription for a cane was akin to an "opinion" that Claimant should use a cane, the Court notes that Dr. Grant prescribed a cane several months *after* the Claimant started using one on his own. The Court recognizes that the prescription may have been written merely to allow for the cost of the cane to be reimbursed. Without more, the record is ambiguous.

Claimant also argues that the ALJ did not adequately develop the record because he failed to obtain a medical opinion specifying what Claimant could and could not do, whether from an examining or non-examining physician, treating or otherwise.

> Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual.[32]

Claimant also argues that the record includes "complex medical data" including pre-and post-operative MRI results, and implies that physician interpretation was necessary.

The ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[33] The ALJ bears this duty even when the claimant is represented by counsel.[34] Here, the Court finds that the ALJ failed to develop the record with respect to Claimant's use of a cane. Claimant testified that he used the cane 100% of the time, and the ALJ did not challenge this testimony with further questioning. The medical records contain instructions and a

---

[32] SSR 96-5p.
[33] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).
[34] *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

prescription from a physician and a physical therapist to use the cane. In the absence of an explanation satisfactory to the ALJ's review, the ALJ had a duty to develop the record further to determine the need for a cane in this case, rather than to make assumptions.

In addition, the Court agrees that the ALJ had a duty to seek some medical source opinions to inform his decision. "Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."[35] This could be obtained most easily through medical source statements, which are routinely obtained in these matters.

### 2. Claimant's Credibility

The ALJ found that Claimant's allegations of disabling neck pain, left arm weakness and numbness, right hand numbness, decreased grip strength, and headaches were not consistent with his treatment providers' observations. The ALJ concluded therefore that Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not wholly credible. The ALJ also noted that Claimant's allegations of chronic low back pain and numbness from his knees to his feet are not consistent with the objective evidence, his treatment providers' observations, or the nature of treatment. Specifically, the ALJ found that:

> Considering the MRI reports that the fact that the claimant underwent two surgeries, I find it likely that the claimant did experience severe symptoms related to his cervical spine impairment. However, Dr. Hadley's earlier suggestions that the claimant was not giving an adequate effort during his examinations, the inconsistencies in the physical examination results between treatment providers and examinations, and the apparent success of the

---

[35] Docket 18 at 15, *citing Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).

claimant's surgeries leads me to conclude that the claimant's allegations are not wholly credible.[36]

The ALJ further noted that Claimant's testimony in 2012 regarding his work history was not consistent with his testimony in 2010. The ALJ speculated that Claimant was attempting to minimize his work activity after the amended onset date.[37]

As this matter is being remanded for other reasons, the ALJ's credibility findings need not be parsed here. However, in the absence of any medical source statements indicating what Claimant *is* capable of, the Court finds that the ALJ's credibility findings regarding Claimant's testimony cannot be supported by the record. There is simply not enough information in the record regarding his abilities and limitations to determine whether or not his testimony is credible.

## V. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that the Claimant's Motion for Summary Judgment at **Docket 19** is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this opinion**.**

**IT IS SO ORDERED** this 13th day of April, 2015.

                                              S/RALPH R. BEISTLINE
                                              UNITED STATES DISTRICT JUDGE

---

[36] Tr. 23.

[37] Tr. 23-28. The Court notes that inconsistency in Claimant's testimony regarding his work history between 2010 and 2012 may be attributed to faulty memory, rather than a lack of honesty.